## PURVIS *et al. v.* CALVERT MORTGAGE COMPANY.

1. One who on account of old age and infirmities was unable to attend a receiver's sale of her home which she had bought and which had been deeded to her and which had been in her possession for many years and which she contended had never been conveyed by her or with her consent to any one, and who engaged the services of an attorney at law

to attend said sale in her stead and give notice of her claim of ownership in advance of the sale, was not guilty of contempt of court for violating an order for the sale of the above-mentioned property by the receiver, and enjoining the defendant, in a case in which the respondent was not a party, from interfering with the possession of the receiver. Nor was the attorney guilty of contempt for giving this notice and warning probable purchasers that they "would buy a lawsuit." The case is not altered merely by reason of the fact that one of the defendants in the original suit was the husband of the respondent in the proceeding for an attachment for contempt but who was not a party in the original suit.

No. 3902. SEPTEMBER 30, 1924.

Attachment for contempt. Before Judge Crum. Ben Hill superior court. July 27, 1923.

*Philip Newbern* and *Wall & Grantham,* for plaintiffs in error.

*A. J. & J. C. McDonald, Quincey & Rice,* and *Vessie Jones,* contra.

RUSSELL, C. J. Upon a petition of the Calvert Mortgage Company, the judge of the superior court appointed a receiver to take charge of all of the assets of T. L. Purvis, to whom the Calvert Mortgage Company had loaned money, which loan was secured by deeds to certain lands in the city of Ocilla and Irwin county, upon which judgments had been obtained and special liens in favor of the lender had been established. At a certain term of the court, upon consent of all parties an order had been passed permitting T. L. Purvis to continue to live in the house situated on lots 7 and 8 in the city of Ocilla until January 1, 1923. The receiver, having been ordered to bring the property to sale on the first Tuesday in June, 1923, demanded of T. L. Purvis possession of the premises, and Purvis informed him that he had no right of possession, but that the premises belonged to his wife, Mrs. T. L. Purvis. He did not refuse to surrender possession, unless the foregoing statement can be construed as a refusal. He merely disclaimed ownership or right of possession. E. H. Dorminey, the receiver, filed a petition against T. L. Purvis, Mrs. T. L. Purvis, and H. E. Oxford, praying that each and all of them be required to show cause why, they should not be attached in contempt of court for violating an order passed by said court in the case of Calvert Mortgage Company et al. *v.* T. L. Purvis and J. C. Brewer, then pending in said court. As to Mrs. Purvis and Oxford, the facts which were alleged by the receiver to con-

stitute contempt of court were, in substance, that H. E. Oxford, an attorney who had represented Purvis in the original suit, had made a statement in behalf of Mrs. Purvis, at the time the property was offered for sale, to the effect that Mrs. Purvis claimed the property, and "that whoever bought it would buy a lawsuit;" that this statement was not made in good faith, and chilled the bidding so that the receiver was unable to procure a bid for the full value of the property. Mrs. Purvis was charged with making her claim in bad faith and in an effort to prevent the receiver from selling the property, so that her husband, T. L. Purvis, could hold possession of it. At the hearing a demurrer to this petition was filed and was overruled, and the plaintiffs in error excepted to this judgment. The court then heard evidence, and upon the conclusion of the case entered a judgment relieving T. L. Purvis, but adjudging Mrs. T. L. Purvis and H. E. Oxford guilty of contempt, and they excepted to this judgment.

In the view we take of the case it is unnecessary to pass upon the demurrer; for we are of the opinion that, even if the court properly overruled the demurrer, it was error to have attached either of the plaintiffs in error for contempt of court. No evidence was introduced in behalf of the petitioner to show that possession of the premises was demanded of either of the defendants. It appears without contradiction that many years ago Mrs. Purvis purchased the house and lot in question from J. A. J. Henderson, who made her a deed which was recorded. She immediately took possession, and has been in possession of the premises ever since. It appears that in the chain of title to the property securing the loan there is a deed from Mrs. Purvis to her husband, T. L. Purvis, which was duly recorded, but evidence was introduced to the effect that this deed was a forgery. There was no evidence that Mrs. T. L. Purvis had refused to surrender possession of the premises to the receiver, nor indeed that he or any one else had ever demanded possession of her. It was shown that the deed which she insists was a forgery had been several years upon record, but there was no evidence that she had at any time ever disclaimed ownership of the property or admitted that her husband had any interest in it. According to the testimony, when the property was levied upon she claimed and vigorously asserted her ownership to her friends and consulted with H. E. Oxford, and on account

of her age and feeble condition she procured the services of Mr. Oxford to make an announcement for her at the sale, as a gratuity and without compensation, to the effect that she was the true owner of the property, and that she intended to assert her rights against any purchaser. As against the respondent Oxford, it was shown that he had represented T. L. Purvis in the litigation which led up to the sale, and that he agreed to warn all bidders at the sale as requested by Mrs. Purvis, and that he did, before the bidding began, notify the assembled crowd that Mrs. Purvis claimed that the property was hers and that any one who purchased the property would buy a lawsuit. As it appears in the record, the testimony as to this point was as follows: Mr. J. C. McDonald testified that after the receiver had read the announcement of sale, "Judge Oxford walked up and says, 'I have an announcement I want to make,' says, 'Mrs. Tally Purvis claims lots 7 and 8 in block C under a deed from J. A. J. Henderson. She is now in possession of these two lots, she never made a deed out of her to any one,' and that whoever bought the property would buy a lawsuit with reference to those two lots. If I remember correctly that is what happened, and the sale took place afterwards, and the only bid I heard was that of Mr. A. J. McDonald." Mr. Oxford testified: "I didn't care to go [to the sale], but court was in session, and when I went down to go to dinner they were fixing to sell this property; and while Carlyle [Mr. McDonald] didn't intentionally misquote me, he quoted the substance of what I said, but it wasn't exactly the way I said it, but my recollection of the way I said it was that when the receiver read the announcement I said, 'Just a moment please,' and says, 'I am requested by Mrs. Purvis to announce that she is the owner of lots 7 and 8 in block C, and holds lot seven where the house is under a deed that is recorded in Book X, folio 172,' and I walked on up town."

It was also shown that Mrs. Purvis had been adjudicated a bankrupt, and had failed to include the house and lot in question in the schedule of her assets, and that she informed Oxford of this fact, and that he told her that the house and lot were justly the property of the trustee in bankruptcy, since it should have been included in her schedule. It appears from the record that there had been a long protracted litigation between the Calvert Mortgage Company and T. L. Purvis, which began in the spring

of 1917, and various orders had been passed by the court directing the receiver in regard to the possession of the premises known as lots 7 and 8, some of which had been more than once modified; but Mrs. T. L. Purvis was never a party in any phase of this litigation. For this reason it is well settled that she was not bound nor her rights affected by any adjudication in that case. At the time the final judgment was rendered in that case, H. E. Oxford, in association with other counsel, represented T. L. Purvis; and no doubt this fact had weight with the learned trial judge in rendering his decision. There are numerous authorities holding that an attorney at law may be guilty of contempt in violating an order or judgment of a court of which he has actual knowledge, although he was not engaged in the cause, and in the present case we may assume, as no doubt the trial judge did, that Mr. Oxford, whether for compensation or gratuitously, was representing Mrs. T. L. Purvis in whatever he may have done in her interest. We call to mind the case of *Wimpy* v. *Phinizy*, 68 *Ga.* 188, where the attorney who represented the defendant in the application for a restraining order, and who had notice of the injunction, was adjudged in contempt for a violation of the order of the court. But the ruling in the *Wimpy* case is not controlling authority in the case at bar. It is distinguishable by its facts from the case now before us. Wimpy represented the defendant on the hearing, just as Oxford did in this case; but in the *Wimpy* case, after his client, Hayden, had been enjoined from interfering with the house then in question, Wimpy put in possession of the premises tenants of those who were said to have purchased from Hayden, and for whose title Hayden was responsible and had guaranteed to protect. It was very plain to the court that Wimpy was doing by indirection what the court had forbidden him to do; for Mr. Chief Justice Jackson, speaking for the court, said: "The employment subsequently by the purchasers from Hayden, and then violating the injunction, has the appearance of a subterfuge—a sort of trick to secure possession for the original client, in the name of secondary employes."

In the present instance the question really involved is not one of possession. It may be assumed from the record that the receiver, who was also sheriff, had been in possession since 1919; for in some of the orders of the court the receiver was permitted

to allow T. L. Purvis to occupy the house until certain times specified in these orders, and for that reason the possession of Purvis must be assumed to have been the possession of the receiver. In fact it is alleged, in paragraph three of the petition for attachment for contempt, that the receiver "did take possession of all of said property and did permit the said Purvis to occupy said house until the first day of January, 1923." It is not alleged that Mrs. Purvis or Oxford had in terms refused to allow the receiver possession of the premises or that they had finally prevented him from taking possession under the order of the court. The substance of the allegation is that Mrs. Purvis, by making a false claim of ownership, and Oxford, by supporting her in this false claim and by the statement made by him at the sale, so chilled the bidding that the property only brought $500, and by reason of their conduct the purchaser refuses to pay the amount of his bid until he is put in possession. In these circumstances the real question to be decided is whether the conduct of Mrs. Purvis and of Oxford in her behalf in claiming the property and making the statement at the sale was contempt of court. As to the evidence against Mrs. Purvis, it was not made to appear that her claim of ownership is so spurious that it should not be passed upon by a jury; and if in good faith she claims the property as her own, the record establishes that she is not deprived from asserting her rights. While generally there is a presumption that possession of the wife is possession of the husband, this presumption may be rebutted; and if Mrs. Purvis establishes that the deed purporting to have been executed by her to her husband is in fact a forgery, she would be entitled to retain possession. One who stands by and sees his property sold as the property of another is estopped, upon sound principles, thereafter ever to claim it as his own; and we see no reason why, for the protection of innocent purchasers as well as in one's own interest, one who bona fide claims property about to be sold may not notify all persons interested that such property is his own, and that he intends to avoid the sale by legal proceedings. It may be said that because Mrs. Purvis had been adjudicated a bankrupt and had failed to include this particular property in her schedule of assets she could not claim the property in good faith, because the real ownership was in her trustee in bankruptcy. Legally there

is nothing in this contention. The fact that the property was not included in her schedule might be a pregnant circumstance indicating to a jury that the deed alleged to have been forged was in fact genuine; or even if upon a hearing the evidence as to the forgery was uncontradicted, and there was no doubt that the deed was a forgery, it might tend to show that Mrs. Purvis concealed her assets in the bankruptcy proceeding in violation of law; but if the property was the property of Mrs. Purvis before bankruptcy and she had included it in her assets, she still has such interest in it as would entitle her to speak of it as her own. True, when a bankrupt's property is taken charge of by the trustee the bankrupt has no further direction over it, nor could he by claim recover it from the trustee or any one else; and yet in a large sense it is still the property of the bankrupt. If his estate is honestly administered, it may in a large part discharge his debts. It may provide him a homestead after paying debts in which the homestead has not been waived; and if by any fortuitous circumstance during the lapse of a long period of time between the adjudication and the sale of the property it should greatly enhance in value, the alleged bankrupt might, after the payment of all of his debts, receive a surplus, as has more than once been the case.

As between the plaintiff in the case at bar and Mrs. Purvis, the property was hers if the deed to her husband was a forgery; for, however fraudulent her conduct in the bankruptcy matter may have been, this conduct would not inure to the benefit of T. L. Purvis or confer title upon him so as to subject the property to the fi. fa. of the plaintiff. So we do not think that the conduct of Mrs. Purvis in having Mr. Oxford to make the statement above quoted properly subjected her to the attachment for contempt. What one may lawfully do himself his attorney at law may do for him; and treating Mr. Oxford as the attorney of Mrs. Purvis, his statements, for the reasons applicable to Mrs. Purvis, were authorized. They did not tend to interfere with the receiver's possession of the premises. They did perhaps tend to prevent probable purchasers from bidding; but the injunction which had been put in force by the order directing the receiver to take possession of the property of T. L. Purvis was merely as to interference with the possession of the premises, and, as stated above, the receiver was in possession so far as any rights of T. L. Purvis

were concerned. Mrs. Purvis was not a party to the proceeding, nor did she claim, as in the *Wimpy* case, supra, any rights under the party against whom the order was directed. On the contrary, her claim of title was wholly antagonistic to that of her husband, whose deed she asserted to be a forgery. She was not put in possession after the order, as in the *Wimpy* case, but had been in possession for nearly 20 years. Her offense was not an interference with possession, but a notification to the public of the rights she would claim; and as the evidence did not go far enough to show that this notification was merely a scheme to keep T. L. Purvis in possession, rather than the breaking of a silence (if the property really was her own) which would have estopped her ever thereafter from asserting her ownership, we think the learned trial judge erred in imposing a penalty upon either Mrs. Purvis or her attorney.

*Judgment reversed. All the Justices concur, except Atkinson, J., dissenting.*